UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JONATHAN MOGG,<br><br>    Plaintiff,<br><br>    v.<br><br>MITCHELL D. JACOBS, individually and<br>d/b/a Jacobs Law Office,<br><br>    Defendant. | Case No. 15-cv-1142-JPG-DGW |

## MEMORANDUM AND ORDER

This is an action filed by plaintiff Jonathan Mogg alleging that defendant Mitchell D. Jacobs violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, when Jacobs, on behalf of his client Ardmore Finance Corporation ("Ardmore"), sent a collections letter to Mogg and filed a lawsuit against Mogg after Mogg had filed a petition for Chapter 13 bankruptcy.  This matter comes before the Court on the parties' cross-motions for summary judgment (Docs. 34 & 37) and their respective responses (Docs. 50 & 46).  The parties have also submitted various other documents either in support of or opposing their summary judgment motions (Docs. 35, 36, 38, 39, 41 & 47), all of which the Court has considered in ruling on the pending motions.

**I.     Standard for Summary Judgment**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that

party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial.  *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).  Where the non-moving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways.  It may present evidence that affirmatively negates an essential element of the non-moving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the non-moving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B).  *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169.  Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists.  *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168.  A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

## II.      Facts

The essential framework of this case is undisputed.  Mogg borrowed $200.00 from Ardmore.  Having failed to pay it back according to the terms of the loan, Ardmore engaged Jacobs to collect the debt from Mogg.  Before paying the debt, Mogg, through counsel, filed a petition for bankruptcy under Chapter 13 on September 23, 2014, and listed Ardmore as one of his creditors.  *See* Case No. 14-31584-lkg (Bankr. S. D. Ill.).

On October 15, 2014, Jacobs sent Mogg a letter trying to collect the debt to Ardmore.  The letter stated, in pertinent part:

> I represent Ardmore Finance Corporation d/b/a Ardmore Finance with regard to your account.  On October 26, 2007, you borrowed $200.00 and agreed to repay that amount plus a finance charge of $98.00 by May 26, 2008.  You have failed to do so and your account, which has been forwarded to me for collection has the balance of $2,040.67, including all payments and credits and including interest up to today.  Please forward your payment for this amount immediately or call the undersigned to arrange for payment or you may be responsible for attorney fees as well.

Mogg did not pay as requested in the letter, so on December 4, 2014, Jacobs filed a state court lawsuit on behalf of Ardmore to collect the debt from Mogg.  Mogg was still in bankruptcy at that time.  Mogg sought legal assistance from his bankruptcy attorney to stop Jacobs' collection activities.

In January 2015, Jacobs received a suggestion of bankruptcy Mogg had filed in the state court action.  Following receipt of that document, Jacobs took no further action to collect the debt outside the bankruptcy proceedings.  On January 5, 2015, the state court stayed the collection case pending discharge or closure of Mogg's bankruptcy proceedings.  Jacobs took no affirmative action to dismiss the case at that time, although he dismissed the case within 30 days of receiving notice that Mogg's bankruptcy plan had been confirmed in March 2016.

The parties dispute other facts. First, Mogg asserts Ardmore received notice of his bankruptcy petition three times: (1) at the time of filing on September 23, 2014, (2) on October 6, 2014, when the Trustee sent notice of the creditor's meeting, and (3) on November 18, 2014, when Mogg's attorney sent creditors an Amended Plan. He argues it is reasonable to conclude from these facts that Jacobs knew of the bankruptcy filing before sending his October 15, 2014, letter and filing the December 4, 2014, collection action. Mogg has pointed to no evidence in the District Court or Bankruptcy Court record that the original petition was sent to Ardmore when it was filed, so the Court cannot credit his assertion to that effect. There is a certificate of service attesting that on October 6, 2014, the Trustee sent the notice of the creditors meeting to creditors on the matrix, of which Ardmore was one (Doc. 36-7 at 4). There is also a certificate of service attesting to that on November 18, 2014, Christy Heuer, presumably someone working in Mogg's bankruptcy attorney's office, mailed Mogg's Amended Plan to Ardmore (Doc. 36-5 at 9-13). The reasonable inference that can be drawn from the foregoing evidence is that two notices were mailed to Ardmore that, if received, should have alerted it to the existence of Mogg's bankruptcy proceeding.

On the other side, Jacobs has presented evidence that neither he nor Ardmore ever received any notice of Mogg's bankruptcy and that he did not know of the bankruptcy proceeding at the time he acted to collect the debt to Ardmore. He has presented affidavit testimony from Ardmore's president, Andrew Doehring, that Ardmore never received notice of a bankruptcy filing and that, if it had, it would have implemented its established procedure to notify Jacobs. That procedure was (1) making a note on the Ardmore file whenever a matter was referred to Jacobs for collection, (2) after receiving any notice relating to a debtor, looking at the debtor's file

4

to see if it had been referred to Jacobs, and (3) if it had been referred, immediately forwarding a copy of the notice to Jacobs. Jacobs has also presented his own affidavit testimony that neither he nor his office ever received a notice of Mogg's bankruptcy filing from Ardmore. The Court believes Doehring is competent to testify about the procedures in place at Ardmore to convey information about bankruptcy filings to Jacobs in cases it had referred to him for collection. However, Doehring and Jacobs have not established that they have personal knowledge of every piece of paper that comes in the mail to their offices such that they could testify that no notice regarding Mogg's bankruptcy arrived. Nevertheless, there is no issue of fact about whether Jacobs knew of Mogg's bankruptcy filing before he sent his October 15, 2014, letter or filed the December 4, 2014, lawsuit; the uncontroverted evidence shows he did not.

The parties further dispute the harm, if any, Mogg suffered as a result of receiving Jacobs' October 15, 2014, letter and of being sued. Mogg states in his affidavit that he was "highly confused and upset" by Jacobs' demand for payment; was "deceived [by the letter and the collection lawsuit] into thinking [he] had to pay" the debt; "sought out the assistance of [his] attorney to protect [him]self and ensure the collections stopped," for which he spent time and money; and was "inconvenienced and felt harassed" by Jacobs' collection efforts. Mogg Aff. ¶¶ 7-11. Jacobs notes that Mogg never paid any of the Ardmore debt and claims that his emotional disturbance was not substantial enough to amount to a concrete injury.

In October 2015, Mogg filed this lawsuit under the FDCPA alleging that Jacobs violated the act by:

- sending him the October 15, 2014, letter when he knew Mogg was represented by counsel, in violation of § 1692c(a)(2);

- filing a lawsuit to collect a debt after Mogg filed for bankruptcy, triggering the automatic bankruptcy stay of 11 U.S.C. § 362(a), and refusing to dismiss the suit, thus harassing,

>oppressing or abusing Mogg, in violation of § 1692d;

- falsely representing in his October 15, 2014, letter and state court filings that the debt was collectible when it was not because of the automatic bankruptcy stay, in violation of § 1692e(2)(A) and (10); and

- attempting to collect attorney's fees and costs incurred in filing a lawsuit in violation of the automatic bankruptcy stay, in violation of § 1692f(1).

Mogg asks the Court for summary judgment on his claim that Jacobs violated the FDCPA by making false representations in violation of § 1692e(2)(A) and (10) when he tried to collect a pre-petition debt that was unable to be collected because of the automatic bankruptcy stay.

Jacobs asks the Court for summary judgment on all counts. He claims he had no knowledge of Mogg's bankruptcy petition when he acted, he dismissed the state court action within a reasonable time after the Bankruptcy Court confirmed Mogg's Chapter 13 Plan, and none of his actions were misleading or had the natural consequence of harassing, oppressing or abusing anyone. Alternatively, he argues he is entitled to the *bona fide* error defense.

**III.   Analysis**

The Court first briefly addressed a jurisdictional matter touched on in Jacobs' response to Mogg's motion for summary judgment: Mogg's standing to sue because of a lack of concrete injury. It then turns to the merits of Mogg's claims and Jacobs' defense.

    A.   <u>Standing to Sue</u>

The doctrine of standing is a component of the Constitution's restriction of federal courts' jurisdiction to actual cases or controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see* U.S. Const. art. III, § 2. Standing contains three elements.

>First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical. . . . Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be

> fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court. . . .. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal citations, quotations and footnotes omitted); *accord Sierra Club v. Franklin County Power of Ill., LLC*, 546 F.3d 918, 925 (7th Cir. 2008).

The issue of standing has been a hot topic this summer following the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). *Spokeo* addressed the first component of standing – injury-in-fact – and what it takes to be a "concrete" injury. The *Spokeo* plaintiff, Robin, sued Spokeo, Inc. under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, because it had published false information about him on its website, a violation of the FCRA that, by itself, warranted a statutory penalty under the act. *Id.* at 1546. Spokeo challenged whether Robin had standing to sue for violations of the act without showing actual or imminent concrete injury beyond a procedural violation of his statutorily created rights. *Id*.

The Supreme Court noted the independent requirement that a plaintiff's injury must be concrete, that is, real, not abstract, and actually existing. *Id.* at 1548. It noted that the injury does not have to be tangible to be concrete. *Id.* at 1549. Nevertheless, the injury must be more than "a bare procedural violation, divorced from any concrete harm." *Id.* The key inquiry is whether the statutory violation "entail[s] a degree of risk sufficient to meet the concreteness requirement." *Id.* at 1550.

In this case, Mogg has presented evidence of a concrete injury resulting from alleged violations of the FDCPA. Aside from his emotional trauma, he has suffered the adverse consequences of having a lawsuit filed against him and has had to incur costs to obtain legal representation in that lawsuit. *See Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1082-83

(7th Cir. 2013) (being sued is concrete harm); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *5 (N.D. Ill. July 11, 2016) (noting *Phillips* survived *Spokeo*).  It is true that Mogg had already hired an attorney to represent him in his bankruptcy proceeding, but representation in the collection action likely posed additional representation costs.  Those costs, and the intangible injury as a consequence of being a defendant in a collection action, suffice to satisfy Article III standing requirements.

      B.      <u>False Representations</u>

The Court next addresses Mogg's claim that Jacobs' made false representations in his October 15, 2014, letter and December 4, 2014, state court complaint that Mogg's debt was collectible when it actually was not because of the automatic bankruptcy stay.  Mogg claims these false representations constituted a violation of § 1692e(2)(A) and (10) of the FDCPA.  This is the only claim on which both parties have moved for summary judgment.

Before turning to the parties' arguments, it is helpful to review some basics of the FDCPA, including the contours of its prohibition on false representations contained in § 1692e.  One of the purposes of the FDCPA is "to eliminate abusive debt collection practices by debt collectors," § 1692(e), including the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," § 1692e.  The act goes on to list sixteen specific prohibitions in this category, including, as relevant to this case, "[t]he false representation of – (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt," § 1692e(2), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," § 1692e(10).

To establish a violation of § 1692e, a plaintiff must show that the statement made by the debt collector would mislead or deceive the unsophisticated, but reasonable, consumer. *Wahl v. Midland Credit Mgmt., Inc.,* 556 F.3d 643, 645-46 (7th Cir. 2009). "The 'unsophisticated consumer' isn't a dimwit. She may be uninformed, naive, and trusting, but she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Id.* at 646 (internal quotations, citations and brackets omitted). A statement that is technically false but would not mislead or deceive the reasonable unsophisticated consumer does not satisfy this standard. *Id.* at 645-46.[1] If the debt collector's statement is misleading or deceptive, there is no further requirement to show the debt collector's state of mind in making the statement. *Id.* at 646.[2]

Debt collectors that make misleading or deceptive statements to consumers may be absolved from liability if they did so unintentionally and in spite of reasonable procedures to prevent such statements. This describes the "*bona fide* error defense" set forth in § 1692k(c):

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

The defense applies where a debt collector makes a clerical or factual mistake, but not a mistake of law in interpreting the FDCPA. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010). For a debt collector to establish the *bona fide* error defense, "(1) it must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed

---

[1] Contrary to Jacobs' assertion, the "least sophisticated consumer" test does not apply. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012).
[2] Jacobs argues in his motion for summary judgment that he could not have violated the FDCPA because he did not know at the time of his actions that Mogg had filed for bankruptcy. While relevant to whether Jacobs violated the Bankruptcy Code, 11 U.S.C. § 362(k), his state of mind is not relevant to whether he violated the FDCPA by making misleading or deceptive statements.

FDCPA violation resulted from a bona fide error . . ., and (3) it must show that it maintained procedures reasonably adapted to avoid any such error." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005).

Mogg contends that Jacobs' October 15, 2014, letter and December 4, 2014, state court complaint, in the context of Jacobs' refusal to dismiss that complaint, stated falsely that Mogg's debts were due and collectible even though they were not because the automatic bankruptcy stay prevented their collection outside of bankruptcy. Mogg argues that these misrepresentations were deceptive because they would cause the unsophisticated consumer to believe the debt was collectible outside of bankruptcy.

Jacobs, on the other hand, argues that the reasonable unsophisticated consumer would not have been misled by his letter or state court filing. Alternatively, Jacobs argues he is entitled to rely on the *bona fide* error defense.

Mogg is not entitled to summary judgment based on Jacobs' statements that Mogg's debt to Ardmore was collectible. Viewing all facts and reasonable inferences in Jacobs' favor, the Court believes it is highly likely Jacobs' letter and lawsuit would mislead or deceive the reasonable unsophisticated consumer[3] into believing that the debt was legally enforceable outside of the bankruptcy proceedings. *See Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013) (suing to collect debt beyond statute of limitations would mislead reasonable unsophisticated consumer). However, it is possible Jacobs may be able to escape liability under

---

[3] Neither party mentions the possibility that the relevant "unsophisticated consumer" is the "unsophisticated consumer represented by counsel unbeknownst to the debt collector." *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 774 (7th Cir. 2007), suggests that the appropriate objective comparison group may be a group that shares certain characteristics with the consumer. In *Evory*, the Court of Appeals noted that the appropriate benchmark for debt collectors that targeted those with a poor command of English is the "unsophisticated consumer" in that group. *Id.*

§ 1692e using the *bona fide* error defense. As noted earlier in this order, there is no evidence from which a reasonable jury could find Jacobs knew about Mogg's bankruptcy filing before he received the suggestion of bankruptcy in the state court lawsuit. Thus, even if they contained misleading statements, Jacobs' prior efforts to collect Ardmore's debt from Mogg were unintentional violations of § 1692e. There is also evidence from which a reasonable jury could believe Ardmore and Jacobs had implemented reasonable procedures to alert Jacobs of bankruptcy notices connected with cases referred to him and that any failures in that respect were either due to postal service errors or isolated clerical errors within Ardmore. Thus, a reasonable jury could find Jacobs excused from liability under the *bona fide* error defense.

However, Jacobs is not entitled to summary judgment either. Viewing all facts and reasonable inferences in Mogg's favor, a reasonable jury could conclude that the system Jacobs and Ardmore had developed to prevent misleading statements to debtors was not reasonable to achieve that end. The evidence shows that two notices were sent to Ardmore in connection with the bankruptcy proceeding, yet neither of them made it to Jacobs. On two occasions, something between the mailing of the notices from two different sources (the Trustee and Mogg's bankruptcy attorney's office) and Jacobs did not work properly. Whether the problem was with the postal service or Ardmore's procedures is unknown, but the events could cause a reasonable jury to question whether the system in place at Ardmore was adequate. The jury could reasonably conclude that, although Ardmore's notification system looked good on paper, it did not function as planned and was therefore not "reasonably adapted to avoid" the kind of misstatements alleged in this case. Jacobs cannot succeed on summary judgment without showing conclusively that the system was satisfactory, and he has not carried that burden.

For these reasons, the Court will deny both parties' motions for summary judgment on Mogg's claim for violations of § 1692e of the FDCPA based on Jacobs' October 15, 2014, letter and December 4, 2014, state court complaint.

C.  Other Alleged Violations

Both parties mention only in passing Mogg's claimed violation of § 1692c (regarding communication with a consumer represented by counsel) and § 1692d (regarding conduct likely to harass, oppress or abuse a consumer), and both parties fail to mention Mogg's claimed violation of § 1692f(1) (regarding collecting unauthorized fees). Neither party supports his positions with respect to these alleged violations with a discussion of the relevant law or how it applies to the facts of this case. Thus, neither has carried his burden on summary judgment of establishing he is entitled to judgment as a matter of law on the remaining alleged violations of the FDCPA.

D.  Settlement Conference

It is not lost on the Court that this case is about a piddly sum in the grand scheme of things: a debt that began as $298.00 and allegedly grew to more than $2,000.00 but which has been discharged without collection. Thus, it appears the main drivers in this case now are actual damages, which appear to be minimal; statutory damages capped at $1,000, *Smith v. Greystone Alliance, LLC*, 772 F.3d 448, 449 (7th Cir. 2014); and reasonable attorney's fees and costs. *See* 15 U.S.C. § 1692k(a); Fed. R. Civ. P. 54(b). The Court seriously doubts that, given the sum in the balance to the plaintiff, it is worth the parties' time and effort to prepare for trial, to try this case, and possibly to pursue an appeal. The Court reminds the parties that the purpose of the FDCPA is to protect consumers, not to employ attorneys. That being said, the Court will refer this matter to Magistrate Judge Donald G. Wilkerson for a settlement conference, which was not held earlier in

this case.

### IV.    Conclusion

Because there are genuine issues of material fact regarding whether Jacobs' procedures for preventing such misleading statements were adequate, and because neither party has adequately supported their respective motions for summary judgment on any other claim, the Court **DENIES** the parties' cross-motions for summary judgment (Docs. 34 & 37) and **REFERS** this case to Magistrate Judge Wilkerson for a settlement conference.

**IT IS SO ORDERED.**
**DATED:   August 18, 2016**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**